IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES ALEXANDER KEPLINGER,  :
:
      Plaintiff  :
:
  v.  :  CIVIL NO. 4:CV-06-946
:
UNITED STATES OF AMERICA,  :
:
:  (Judge Jones)
      Defendant  :

## MEMORANDUM AND ORDER

May 23, 2006

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

    This pro se civil rights complaint ("Complaint") was initiated by James Alexander Keplinger ("Plaintiff" or "Keplinger"), an inmate presently confined at the Allenwood Federal Correctional Institution, in White Deer, Pennsylvania ("FCI-Allenwood"). The Complaint is accompanied by an application requesting leave to proceed *in forma pauperis*. For the reasons set forth below, Keplinger's action will be dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915.

    Named as the sole Defendant is the United States of America. Plaintiff

describes himself as being a non-Christian and notes that his present action is not related to his ongoing federal confinement. Keplinger states that the term "God" is contrary to his religious beliefs. His Complaint claims that the use of the word God in the Pledge of Allegiance ("Pledge"), on United States currency ("Motto") and in the song "America the Beautiful" is unconstitutional. He seeks injunctive relief, specifically, that the word God be removed from the Pledge, federal currency, and "America the Beautiful" and replaced with "the true name of Worship 'Yahweh'." Doc. 1, ¶ IV(3).

**DISCUSSION**:

28 U.S.C. § 1915 imposes obligations on prisoners who file civil actions in federal court and wish to proceed *in forma pauperis*. § 1915(e)(2) provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

Consequently, federal courts reviewing civil rights complaints filed by persons wishing to proceed *in forma pauperis* may determine that process should not be issued if the complaint fails to state a claim upon which relief may be granted. "[A] complaint should not be dismissed for failure to state a claim unless

it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The test for failure to state a claim is whether, under any reasonable reading of the pleadings, plaintiff may be entitled to relief. Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993). Additionally, a court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them." Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). Trial courts "are in the best position" to determine when an indigent litigant's complaint is appropriate for summary dismissal. Denton v. Hernandez, 504 U.S. 25, 33 (1992).

The factual averments set forth in the Complaint, namely that the word God appears in the Pledge, Motto, and "America the Beautiful" are true. It is well settled that the "government must avoid excessive interference with, or promotion of religion." VanOrden v. Perry, 125 S. Ct 2854, 2868 (2005)(Breyer, concurring). The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; ..." U.S. CONST. amend. I. Prisoners must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment. Cruz v.

Beto, 405 U.S. 319, 322 n.2 (1972).

The United States Supreme Court in Lemon v. Kurtzman, 403 U.S. 602 (1971) set forth a three part analysis to be employed when reviewing claims brought pursuant to the Establishment Clause of the First Amendment. The initial inquiry is whether the challenged subject has a secular purpose. Second, the court must ask whether the subject has a principal or primary effect of advancing or inhibiting religion. Finally, a review of whether the challenged subject fosters government entanglement with religion must be undertaken.

In The Circle School v. Pappert, 381 F.3d 172 (3d Cir. 2004), the Court of Appeals for the Third Circuit addressed the constitutionality of a Pennsylvania state statute which required schools to provide for the recitation of the Pledge of Allegiance or national anthem each morning. The Court of Appeals noted that "most citizens of the United States willingly recite the Pledge of Allegiance." Id. at 183. However, the Court added that the minority of persons "who march to their own drummers" were entitled to protection under the Constitution, specifically, the First Amendment, and held that the statute requiring private schools to recite the Pledge or national anthem at the beginning of each school day was unconstitutional. Id.

As demonstrated by the above cases, government officials are constitutionally forbidden to compel or coerce individuals to recite the Pledge. However, in the present case there is no claim by Plaintiff that he was subjected to a compulsory recitation of the Pledge or "America the Beautiful".  See Torcaso v. Watkins, 367 U.S. 488 (1961).   Rather, Plaintiff's complaint generally asserts that the inclusion of the word God  in the Pledge, Motto, and "America the Beautiful" is unconstitutional.

However, as relief, Keplinger's Complaint  asks that the word God be replaced with Yahweh which he describes as being the "true name of worship." (Rec. Doc. 1, ¶ IV(3)).  By acknowledging that the presence of a certain religious term as opposed to another in the Pledge, Motto and patriotic songs would be constitutionally acceptable, Plaintiff undermines his Complaint to the extent that he asserts that the challenged utilizations of the word God violate the Establishment Clause.

The Pledge of Allegiance ("Pledge") was initially conceived as part of the commemoration of the 400th anniversary of Christopher Columbus' discovery of America.  See Elk Grove v. Newdow, 542 U.S. 1, 6 (2004).  A 1942 joint resolution of Congress codified a set of rules and customs pertaining to the use of the flag.  The codification set forth the language and proper recitation method of the Pledge.  Congress amended the Pledge  to include the phrase "under God" in

5

1954.  See 68 Stat. 380.  The House Report that accompanied the legislation observed that the Pledge reflected the traditional concept that this nation was founded on a fundamental belief in God.  See  H.R. Rep. No. 1693, 83rd Cong., 2d Sess., p.2 (1954).

The words "In God We Trust"("Motto")  first appeared on coins during the Civil war.  In 1864, Congress authorized the appearance of the Motto on the two cent coin.  Since 1938 all United States coins have borne the Motto.  In 1956, Congress declared that the motto of the United States would be "In God We Trust."  Act of July 30, 1956, ch. 795, 70 Stat. 732.

Many of our patriotic songs such as "God Bless America" include clear references to God.  The original version of "America the Beautiful" was written in 1893 by Katherine Lee Bates, an English teacher at Wellesley College.  A second version was penned by Bates in 1904.  The song includes the phrase "God shed his grace on thee."   While held in high esteem by most Americans, the song does not enjoy any legal status as a national hymn or national anthem.  Hence, it is not subjected to the same scrutiny as the Pledge or Motto, both of which have been bestowed legal status due to Congressional enactments.  Since  the Defendant has not undertaken any official adoption of "America the Beautiful," its wording does not qualify as action taken under the color of law.[1]  Plaintiff's action to the extent

---

[1] A plaintiff, in order to state an actionable civil rights claim, must plead two essential
(continued...)

it challenges the wording of "America the Beautiful" is subject to summary dismissal.

With respect to the Pledge and Motto, the United States Supreme Court described the Pledge as having "evolved as a common public acknowledgment of the ideals that our flag symbolizes." Elk Grove, 542 U.S. at 6. The Court added that "its recitation is a patriotic exercise designed to foster national unity and pride in those principles. Id. A concurring opinion by the late Chief Judge Rehnquist in Elk Grove noted that events throughout the history of our country "strongly suggest that our national culture allows public recognition of our Nation's religious history and character." Id. at 30. Chief Judge Rehnquist concluded that recital of the phrase "under God" in the Pledge was not a religious exercise but rather "a declaration of belief in the allegiance and loyalty to the United States flag and the Republic which it represents." Id. at 31. Furthermore, the phrase "under God" "is in no sense a prayer, nor an endorsement of any religion." Id.

While this Court agrees that individuals should not be compelled to recite the Pledge, it is nonetheless a patriotic exercise and not a prayer directed towards any particular God, faith, or religion. The phrase God as used in the Pledge is not

---

[1](...continued)
elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

a prayer nor an endorsement or establishment of any particular religious belief.  It has a secular purpose, and does not foster excessive government entanglement with religion and thus, passes the Lemon test.  The use of God in the Pledge simply reflects the traditional concept that our Nation was founded on a fundamental belief in God.  See Engel v. Vitale, 370 U.S. 421, 434 (1962)("The history of man is inseparable from the history of religion."); Lynch v. Donnelly, 465 U.S. 675 ("Our history is replete with official references to the value and invocation of Divine guidance.").

In Gaylor v. United States, 74 F.3d 214, 216 (10th Cir. 1996), the Court of Appeals for the Tenth Circuit stated that the statue establishing the Motto had a secular purpose, namely, it symbolizes the historical role of religion in our society.  See also  County of Allegheny v. ACLU, 492 U.S. 573, 625 (1989).  The Tenth Circuit Court of Appeals added that "a reasonable observer, aware of the purpose, context, and history of the phrase "In God We Trust" would not consider its use or reproduction on U.S. currency to be an endorsement of religion."  Id. at 217.  It concluded that the Motto and its reproduction on currency did not violate the Establishment Clause.  See also  O'Hare v. Murray, 588 F.2d 1144 (5th Cir. 1978).

It is apparent to this Court that based on an application of the above standards, as with the Pledge, the Motto passes the Lemon test in that it has a

8

secular purpose, does not promote religion and does not foster excessive entanglement with religion.  The Motto and its reproduction on federal currency do not violate the Establishment Clause.

Moreover, accepting *arguendo* that Keplinger has set forth a viable constitutional claim under the Establishment Clause with respect to the Pledge and the Motto, he is not requesting that religious references in the Pledge and Motto should be forbidden, rather his Complaint is asking that the word God be replaced with Yahweh.  Keplinger's acknowledgment that a certain religious reference in the Pledge, Motto, and patriotic songs  would be within acceptable constitutional parameters undermines any claim he is attempting to assert under the Establishment Clause.  Furthermore, the relief requested by Plaintiff, replacement of one religious term with another, cannot be provided by this Court.[2]

In conclusion, the wording of "America the Beautiful" is not action taken under color of law.  Thus, there is no basis for civil rights liability with respect to its wording.  Second, the Pledge and Motto are not exercises of religion, satisfy the Lemon test, and therefore the use of the word God therein does not violate the Establishment Clause.  Finally, Plaintiff's request that the term Yahweh can be properly substituted for God undermines his claim that the Pledge and Motto

---

[2] It is also noted that  Justice O'Connor's concurring opinion in Elk Grove, indicates that the history, character and context of religious references in patriotic songs "prevent them from being constitutional violations at all." Id. at 37.

violate the Establishment Clause.  Furthermore, Keplinger's request that the word Yahweh be substituted for God in the Pledge and Motto is relief that cannot be provided by this Court.  Plaintiff's Complaint will be dismissed for failure to state a claim upon which relief may be granted.  Consequently,

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's complaint is dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915 (e)(2)(B)(ii).

2. The Clerk of Court is directed to close the case.[3]

                              s/ John E. Jones III
                              John E. Jones  III
                              United States District Judge

---

[3] The dismissal of this action does not relieve Plaintiff of the obligation to pay the full filing fee.  Until the filing fee is paid in full, the Administrative Order previously issued in this case is binding on the Warden of FCI-Allenwood, as well as the Superintendent of any correctional facility to which Plaintiff is transferred.